**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 20-24012-Civ-GAYLES/TORRES

NEIL LURIA, AS RECEIVER FOR SOLAR
ECLIPSE INVESTMENT FUND III, LLC,
SOLAR ECLIPSE INVESTMENT FUND IV, LLC,
SOLAR ECLIPSE INVESTMENT FUND V, LLC,
SOLAR ECLIPSE INVESTMENT FUND VI, LLC,
SOLAR ECLIPSE INVESTMENT FUND X, LLC,
SOLAR ECLIPSE INVESTMENT FUND XI, LLC,
SOLAR ECLIPSE INVESTMENT FUND XII, LLC,
SOLAR ECLIPSE INVESTMENT FUND XV, LLC,
SOLAR ECLIPSE INVESTMENT FUND XVI, LLC,
SOLAR ECLIPSE INVESTMENT FUND XVII, LLC,
SOLAR ECLIPSE INVESTMENT FUND XVIII, LLC,
SOLAR ECLIPSE INVESTMENT FUND XIX, LLC,
SOLAR ECLIPSE INVESTMENT FUND XXI, LLC,
SOLAR ECLIPSE INVESTMENT FUND XXIII, LLC,
SOLAR ECLIPSE INVESTMENT FUND XXIV, LLC,
SOLAR ECLIPSE INVESTMENT FUND XXVI, LLC,
SOLAR ECLIPSE INVESTMENT FUND XXVIII, LLC,
SOLAR ECLIPSE INVESTMENT FUND XXIX, LLC,
SOLAR ECLIPSE INVESTMENT FUND XXX, LLC,
SOLAR ECLIPSE INVESTMENT FUND XXXI, LLC,
SOLAR ECLIPSE INVESTMENT FUND XXXIII, LLC,
SOLAR ECLIPSE INVESTMENT FUND XXXIV, LLC,

      Plaintiff,

v.

T-MOBILE USA, INC., and
INTERNATION SPEEDWAY CORPORATION,

      Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON PLAINTIFF'S MOTION TO REMAND

This matter is before the Court on Neil Luria's ("Plaintiff" or "Receiver), as the receiver for the above captioned funds (the "Funds"), motion to remand against T-Mobile USA, Inc. ("T-Mobile") and International Speedway Corporation ("ISC") (collectively, "Defendants"). [D.E. 9]. Defendants separately responded to Plaintiff's motion on November 4, 2020 [D.E. 22, 23] to which Plaintiff separately replied on November 12, 2020. [D.E. 26, 27].[1] Therefore, Plaintiff's motion is now ripe for disposition. After careful consideration of the motion, responses, replies, relevant authorities, and for the reasons discussed below, Plaintiff's motion to remand [D.E. 9] against T-Mobile should be **DENIED** and the motion against ISC should be **GRANTED**.[2]

### I. BACKGROUND

On September 1, 2020, Plaintiff filed a complaint against Defendants in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. [D.E. 1, Ex. A]. The complaint alleges that T-Mobile and ISC enabled and participated in a $2.5 billion dollar Ponzi scheme and substantially and proximately caused harm to Plaintiff. The central figures that orchestrated the scheme were Jeff and Paulette Carpoff and their company DC Solar Distribution Inc. and its related entities ("DC

---

[1]    ISC moved to file a sur-reply on November 23, 2020 [D.E. 29], but the Court denied the request [D.E. 31]. ISC objected to that denial, but such objection was denied by the Court on January 6, 2021. [D.E. 33, 35].

[2]    On November 5, 2020, the Honorable Darrin P. Gayles referred any dispositive matters to the undersigned Magistrate Judge for a Report and Recommendation. [D.E. 25].

Solar"). DC Solar manufactured mobile solar generators ("MSGs") which provided a temporary source of electrical power. DC Solar sold the MSGs to investors, including the Funds. Between 2011 and 2018, the Funds purchased MSGs from DC Solar worth hundreds of millions of dollars. The Funds paid approximately 30% of the sale price for each MSG (approximately $45,000) up front and issued a promissory note to DC Solar for the remaining amount. The Funds then leased the MSGs back to DC Solar and then DC Solar leased the MSGs to end-user third parties, such as Defendants. T-Mobile used the MSGs as emergency power for cellular towers and ISC to power light stands at its racetracks. The Funds were attracted to the investment in part[3] because DC Solar had long-term lease agreements with Defendants which allowed for an accurate valuation of the MSGs, provided the Funds with revenue to pay off the promissory notes, and showed DC Solar had reputable business partners.

Many of the MSGs DC Solar purported to manufacture never existed, however. The Carpoffs and several other co-conspirators instead used DC Solar as a vehicle to defraud the Funds and other investors. To date, the Carpoffs and other key conspirators of DC Solar have been charged with, and pled guilty to, an array of federal charges. DC Solar is now part of liquidating bankruptcy proceedings pending in the United States Bankruptcy Court for the District of Nevada.

T-Mobile is a publicly traded wireless network operator that is incorporated in Delaware and has its principal place of business in Washington state. A T-Mobile employee, Alan Hansen ("Hansen"), began T-Mobile's relationship with the Carpoffs

---

[3]    We note that the Funds first purchased MSGs in 2011, but the first long-term lease entered into by Defendants was not until late 2015 as later discussed.

in 2012.  In 2014, T-Mobile started to rent MSGs from DC Solar pursuant to short-term as needed agreements.  In September 2015, T-Mobile allegedly entered into a long-term lease with DC Solar that required T-Mobile to lease 1,000 MSGs at a rent of $1,100 per month for ten years (the "T-Mobile Lease").  Hansen signed the lease on behalf of T-Mobile.  Prior to signing the T-Mobile Lease, Plaintiff alleges T-Mobile knew it would not honor it and would instead continue to only rent MSGs on a short-term as needed basis.  T-Mobile and DC Solar therefore allegedly used the T-Mobile Lease to induce the Funds to purchase MSGs based on the promised revenue of the T-Mobile Lease.  For his part, Hansen received a $1 million dollar payment from DC Solar in exchange for signing the T-Mobile Lease and eventually went to work for DC Solar.  In July 2020, Hansen pled guilty to aiding and abetting and money laundering charges.

ISC, a Florida corporation, is a motorsports promoter which owns and operates 13 motorsports facilities, including Daytona International Speedway.  In 2016 and 2017, ISC entered into three separate ten-year agreements with DC Solar to sublease MSGs, which would require ISC to pay DC Solar $150 million dollars over ten years (the "ISC Subleases").  Each ISC Sublease named one of the Funds as a third-party beneficiary to the agreement and contained a provision that there were no other agreements between ISC and DC Solar.  However, Plaintiff alleges that ISC and DC Solar entered into addendums for each ISC Sublease that allowed ISC to terminate the ISC Sublease in its entirety at its convenience.  In addition, the addendums each contained a promise from DC Solar that it would enter into sponsorship agreements

with several affiliates of ISC.  As a result, DC Solar and ISC affiliates entered into five sponsorship agreements that required DC Solar to pay the ISC affiliates $7.5 million dollars per year.  Plaintiff claims that these sponsorship agreements were concealed from the Funds.

The complaint thus alleges the following causes of action against T-Mobile: Count I Fraudulent Misrepresentation/Concealment, Count II Aiding and Abetting Fraud, Count III Aiding and Abetting Conversion, and Count VII Negligent Supervision and Misrepresentation.  And the following against ISC:  Count IV Fraudulent Misrepresentation/Concealment, Count V Aiding and Abetting Fraud, Count VI Aiding and Abetting Conversion, Count VIII Negligent Misrepresentation, and Count IX Breach of Contract.

On September 30, 2020, T-Mobile removed this case to federal court on the basis of the Court's diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1447.  [D.E. 1].  On October 14, 2020, Plaintiff moved to remand the claims against Defendants back to State court.  [D.E. 9].  On October 19, 2020, ISC filed a notice joining T-Mobile's removal.  [D.E. 10].[4]  In opposition to the motion for remand, Defendants argue that Plaintiff is a citizen of Illinois, so there is complete diversity or, if Plaintiff is deemed a citizen of Florida, Plaintiff fraudulently joined Defendants in one action to defeat complete diversity.

---

[4]     On December 29, 2020, T-Mobile filed a notice of supplemental authority that shows Defendants and another defendant had recently filed a notice of removal of a related case brought by Solar Eclipse Investment Fund VII, VIII, XIV, XXVII, and XXXV.  [D.E. 34].

## II. APPLICABLE PRINCIPLES AND LAW

### A.    Removal Standard

"The plaintiff is the master of his complaint and is free to choose federal or state jurisdiction." *Morock v. Chautauqua Airlines, Inc.*, 2007 WL 1725232, at *1 (M.D. Fla. June 14, 2007) (citing *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987).  Yet, a defendant may remove a case from a state to federal court pursuant to 28 U.S.C. § 1441.  If a defendant decides to do so, the defendant bears the burden of putting forth sufficient facts supporting the existence of federal jurisdiction.  *See McCormick v. Aderholt,* 293 F.3d 1254, 1257 (11th Cir. 2002); *Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 n.4 (11th Cir. 1998).  A federal court must determine whether it has subject matter jurisdiction at the time a removal notice is filed.  *See Poore v. American-Amicable Life Ins. Co., Inc.,* 218 F.3d 1287, 1290-1291 (11th Cir. 2000).  If a case is removed on the basis of section 1332(a), there must be (1) complete diversity between the parties and (2) there must be an amount in controversy that exceeds $75,000.  28 U.S.C. § 1332(a).

### B.    Fraudulent Joinder Standard

An exception to the complete diversity rule—that a federal court must remand a case to state court if there is not complete diversity between the parties—arises when a plaintiff fraudulently joins a defendant solely to defeat federal jurisdiction. "The burden of the removing party is a 'heavy one.'" *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997) (citing *B, Inc. v. Miller Brewing Co.,* 663 F.2d 545, 549 (5th Cir. 1981)).  To determine whether a case should be remanded, the district court

must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff.  The plaintiff's pleadings as they exist at the time of removal provide the canvas on which these determinations are made.  *Id.* (citing *Miller Brewing Co.*, 663 F.2d at 548-49).  Though the pleadings may be "supplemented by any affidavits and deposition transcripts submitted by the parties*." Pacheco de Perez v. AT&T Co.,* 139 F.3d 1368, 1380 (11th Cir. 1998).

While the proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b), the jurisdictional inquiry "must not subsume substantive determination." *Miller Brewing Co.*, 663 F.2d at 550.  In other words, a plaintiff need not show that he could survive a motion for summary judgment because "the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be 'a reasonable basis for predicting that the state law might impose liability on the facts involved.'"  *Crowe*, 113 F.3d at 1541-42 (quoting *Miller Brewing Co.*, 663 F.2d at 550).  This means that the procedures are similar but the substantive standards are different because "the trial court must be certain of its jurisdiction before embarking upon a safari in search of a judgment on the merits."  *Id.* at 1538.

"If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court

must find that joinder was proper and remand the case to state court." *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440-41 (11th Cir. 1983), *superseded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 991 F.2d 1533 (11th Cir. 1993); *see also Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1299 (11th Cir. 2007) ("[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary.") (citations omitted).  In short, when considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law.

These principles make sense given the law that "absent fraudulent joinder, plaintiff has the right to select the forum, to elect whether to sue joint tortfeasors and to prosecute his own suit in his own way to a final determination." *Parks v. The New York Times Co.,* 308 F.2d 474, 478 (5th Cir. 1962).  The strict construction of removal statutes also prevents "exposing the plaintiff to the possibility that he will win a final judgment in federal court, only to have it determined that the court lacked jurisdiction on removal," *see Cowart Iron Works, Inc. v. Phillips Constr. Co., Inc.,* 507 F. Supp. 740, 744 (S.D. Ga. 1981) (quoting 14A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3721), a result that is costly not just for the plaintiff, but for all the parties and for society when the case must be relitigated.

### III.   ANALYSIS

On October 14, 2020, pursuant to 28 U.S.C. § 1447(c), Plaintiff moved to remand this case to Florida state court.  Plaintiff argues that complete diversity is lacking because, while T-Mobile alone is diverse, Plaintiff and ISC are both citizens of Florida.  And Plaintiff asserts that T-Mobile is properly joined as a party under Rule 20 of the Federal Rules of Civil Procedure because the claims against it arise out of the same transaction and occurrence or series of transactions or occurrences as the claims against ISC, namely transactions related to the Ponzi scheme.  With the burden clearly resting on Defendants, however, we begin with their arguments for removal.

Defendants' primary argument in their notice of removal is that Plaintiff is a citizen of Illinois.  Because T-Mobile is a citizen of Delaware and Washington and ISC is a citizen of Florida, Defendants contend there is federal jurisdiction based on complete diversity.  The parties agree that the citizenship of Receiver, not the Funds, determines diversity.  *See Office of Atty Gen. v. Hess*, 2008 WL 4952477, *1 (S.D. Fla. Nov. 18, 2000) ("A receiver's citizenship for diversity purposes is established by reference to his citizenship, not that of the corporations or persons whose interests he represents.") (citing *Mitchell v. Maurer*, 293 U.S. 237, 238-39 (1934)).

This initial argument is easily debunked.  Plaintiff has submitted clear evidence that he is a citizen of Florida, not Illinois.  Plaintiff lives in Orlando, Florida, is registered to vote in Florida, has a Florida driver's license, and has served on a jury in Florida circuit court.  [D.E. 9, Ex. 1-4].  Once provided with this information,

9

Defendants did not challenge that evidence and indeed have tacitly dropped this argument.  We therefore move to Defendants' backup argument to sustain diversity jurisdiction:  fraudulent joinder.

Defendants specifically contend that diversity still exists because Plaintiff fraudulently joined Defendants in two ways.  First, Plaintiff fraudulently joined ISC because there is no possible cause of action against ISC. Its presence in the action should thus be discounted.  Second, Plaintiff fraudulently joined T-Mobile because there is no logical connection between the facts underlying the claims against ISC and the facts underlying the claims against T-Mobile.  Because Plaintiff fraudulently joined both Defendants to defeat federal jurisdiction, Defendants conclude that their citizenship should be disregarded for the purposes of determining diversity jurisdiction.

### A.    *General Principles of Fraudulent Joinder*

There are generally two ways to establish fraudulent joinder, either (1) by showing there is no possibility the plaintiff can establish a cause of action against the resident defendant or (2) by showing that the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.  *See Crowe,* 113 F.3d at 1538 (citing *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1561 (11th Cir. 1989)).

Under the first type of fraudulent joinder, "[i]f there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the

case to the state court." *Tillman v. R.J. Reynolds Tobacco,* 340 F.3d 1277, 1279 (11th Cir. 2003) (reiterating standard from *Tillman v. R.J. Reynolds Tobacco,* 253 F.3d 1302, 1305 (11th Cir. 2001)). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a possibility of stating a valid cause of action in order for the joinder to be legitimate." *Tillman,* 253 F.3d at 1305. "[F]ederal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." *Pacheco de Perez,* 139 F.3d at 1380-81 (quoting *Crowe,* 113 F.3d at 1538). Ultimately, the defendant must show by clear and convincing evidence that the plaintiff cannot establish a cause of action against the resident defendant. *See Henderson v. Washington Nat. Ins. Co.,* 454 F.3d 1278, 1281 (11th Cir. 2006).

A third category of fraudulent joinder is called "fraudulent misjoinder" or "procedural misjoinder" that applies "where a diverse defendant is joined with a nondiverse defendant as to who there is no joint, several, or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs,* 154 F.3d at 1287. If a Court determines that a defendant is fraudulently joined, it must "ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson,* 454 F.3d at 1281.

Defendants posit that the first and third type of fraudulently joinder apply. We address them in turn.

11

**B.**    ___A "Possible" Cause of Action against ISC___

ISC argues it has been fraudulently joined because Plaintiff has not pled any possible causes of action against it.[5]   For this argument to succeed, ISC must show, by clear and convening evidence, that Plaintiff has no possibility of establishing any of its five causes of action against it.   *See Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011).   Because remand would be to a Florida court, Florida law applies.   Under Florida law, our inquiry is limited to the four corners of the complaint, including its attachments, and all well pleaded allegations are taken as true.   *City of Gainesville v. State, Dep't of Transp.*, 778 So. 2d 519, 522 (Fla. Dist. Ct. App. 2001). Taking all Plaintiff's allegations as true, at the very least, it is possible that a court in Florida would conclude that one of Plaintiff's causes action against ISC is satisfied.[6]

---

[5]    ISC, for the first time, in its motion for leave to file a sur-reply [D.E. 29], requests oral argument on the motion to remand because it claims that Plaintiff raises new arguments in his reply brief and fails to address the Florida pleading standard.   As previously determined by the Court [D.E. 31], Plaintiff did not raise new arguments in his reply brief.   And under the Florida pleading standard, there is a possibility that one of Plaintiff's causes of action against ISC may succeed, so Plaintiff not addressing the standard is moot.   Accordingly, oral argument is unnecessary.   *See* Local Rule 7.1(b)(2) ("The Court in its discretion may grant or deny a hearing as requested, upon consideration of both the request and any response thereto by an opposing party."); *see also Organizacion Miss Am. Latina, Inc. v. Ramirez Urquidi*, 2018 WL 4777167, at *2 (S.D. Fla. Sept. 27, 2018) ("A district court need not hold a hearing where it has 'a detailed record of the evidence before it' and where the party requesting the hearing does 'not adequately indicate how . . . a hearing w[ill] . . . aid[ ] the court's determination.") (citing *S.E.C. v. Lauer*, 610 F. App'x 813, 821 (11th Cir. 2015)).

[6]    ISC also argues that any claims against it would be barred by being property of the DC Solar bankruptcy.   This argument fails because it is not applicable to a motion to remand and should be raised in a motion to dismiss.   *See JAWHBS, LLC v. Arevalo*, 2016 WL 4142498, at *1 (S.D. Fla. Aug. 4, 2016).

For instance, ISC has not shown by clear and convincing evidence that it is impossible for Plaintiff's aiding and abetting fraud claim against ISC (Count V) to succeed in a Florida court. "Although no Florida court has explicitly recognized a cause of action for aiding and abetting fraud, Florida courts have assumed that the cause of action exists." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1097-98 (11th Cir. 2017) (citing *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 371-72 (Fla. Dist. Ct. App. 2005)). Aiding and abetting fraud has three elements: (1) the existence of "an underlying fraud"; (2) that "[t]he defendant had knowledge of the fraud"; and (3) that "[t]he defendant provided substantial assistance to advance the commission of the fraud." *ZP No. 54 Ltd. P'ship.*, 917 So. 2d at 372.

Plaintiff alleges that there was fraud, that ISC knew of the fraud, and that ISC gave substantial assistance to commit the fraud. Particularly, the complaint details the specific ISC Subleases and their corresponding addendums and related sponsorship agreements that were hidden from the Funds and allowed DC Solar to facilitate the fraud. ISC's argument that "Plaintiff makes only conclusory or false allegations that ISC knew of the Ponzi scheme concerning non-existent MSGs" and that "[t]hese reckless and inflammatory allegations are untrue . . . ." is not well taken, especially with a clear and convincing evidence standard. [D.E. 22, pg. 12]. Disregarding allegations as conclusory and false "sounds a lot like the 12(b)(6) standard, not the fraudulent joinder standard. Nothing fraudulent joinder precedent requires anything more than conclusory allegations or a certain level of factual specificity." *Stillwell*, 663 F.3d at 1334.

Accordingly, ISC has failed to carry its heavy burden of showing fraudulent joinder under the theory that there is no possibility Plaintiff can establish a cause of action against ISC in a Florida court. *See Crowe*, 113 F.3d at 1538. Plaintiff's motion to remand the claims against ISC should therefore be **GRANTED**. *See M.W. v. Ford Motor Co.*, 2015 WL 1311029, at *6 (M.D. Fla. Mar. 24, 2015) (finding a possible cause of action existed against non-diverse defendants and thus granting remand back to state against non-diverse defendants).

### C.    *Procedural Misjoinder*

Defendants next argue that Plaintiff has fraudulently joined Defendants because the alleged claims against T-Mobile do not arise out of the same transaction, occurrence, or series of transactions or occurrences as the claims alleged against ISC. This argument falls under the third category of fraudulent joinder, which is frequently referred to, more aptly, as "procedural misjoinder" or "fraudulent misjoinder."

A plaintiff's joinder is proper, and not procedural misjoinder, when it satisfies the permissive joinder requirements of Rule 20. Rule 20 states that "[p]ersons . . . may be joined in one action as defendants" as long as (1) the claims against them "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" as the underlying action, and (2) "[a] question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). Courts in the Eleventh Circuit determine if there is a "logical relationship" in determining whether claims arise from the same transaction or occurrence, or series of transactions or

occurrences.  *See, e.g., Smith v. Trans–Siberian Orchestra*, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010).  "[T]here is a logical relationship when the 'same operative facts serve as the basis of both claims.'"  *M.W.*, 2015 WL 1311029, at *3 (quoting *Republic Health Corp. v. Lifemark Hosps. of Fla.*, 755 F.2d 1453, 1455 (11th Cir. 1985)); *see also Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1381 (11th Cir. 1991) ("The aggregate operative facts that can act as a common basis for both claims have been broadly construed in Florida."); 2600 *Island Blvd. Condo. Assoc., Inc. v. Great American Ins. Co. of N.Y.*, 2011 WL 13224080, at *3 (S.D. Fla. Nov. 29, 2011) ("A third situation of fraudulent joinder is also recognized in the Eleventh Circuit where parties are so egregiously misjoined pursuant to Rule 20 that it rises to the level of fraudulent misjoinder.").

If a plaintiff improperly joins defendants contrary to Rule 20, Rule 21 applies. Rule 21 allows a court to sever any claim against a party procedurally misjoined, which is "the proper remedy."  *Daker v. Head*, 730 F. App'x 765, 768 (11th Cir. 2018) (citing Fed. R. Civ. P. 21); *see also M.W.*, 2015 WL 1311029, at * 6 (finding diverse defendants procedurally misjoined and thus severing and remanding claims against non-diverse defendants back to state court).

To determine whether there is procedural misjoinder under Rule 20, we must thus specifically address whether the claims against T-Mobile arise from the same set of facts as the claims against ISC.  If the answer is no, then Plaintiff has procedurally misjoined the claims against Defendants, which may then counsel in favor of severance and retaining jurisdiction as to the diverse defendant.  In making

this determination, we look at Plaintiff's complaint [D.E. 1, Ex. 2], which is Plaintiff's operative pleading at the time of removal.   *See Crowe,* 113 F.3d at 1538.

Here, the allegations in the complaint do not satisfy the permissive joinder requirements of Rule 20. An objective review of the complaint shows that Plaintiff's claims against T-Mobile do not arise out of the same transaction, occurrence, or series of transactions or occurrences as his claims against ISC.[7] Plaintiff's factual allegations related to the misrepresentations, negligent supervision, conversion, and aiding and abetting claims against T-Mobile are entirely distinct from the factual allegations necessary to support his misrepresentations, conversion, aiding and abetting, and breach of contract claims against ISC.  For example, the facts that would support the claims against T-Mobile involve questions regarding the T-Mobile Lease, Hansen, and other T-Mobile employees and primarily the actions of DC Solar prior to 2016.  The facts that would support the claims against ISC, on the other hand, involve factual questions related to the ISC Sublease and their addendums, the sponsorship agreements, employees of ISC and its affiliates and primarily the actions of DC solar in and after 2016.  The transactions are thus not logically related to each other.

Therefore, the fact finder must look to two separate and distinct transactions or occurrences.  *See White v. Greenpoint Mortg. Funding Inc.*, 2014 WL 11370418, at *1 (S.D. Fla. June 26, 2014), *aff'd sub nom. White v. Bank of Am. Nat. Ass'n*, 599 F. App'x 379 (11th Cir. 2015) (finding joinder of various mortgage companies improper

---

[7]      There is also no joint and several liability based on T-Mobile and ISC's alleged conduct.

in a RICO action because "none of Plaintiffs' claims relate to the same mortgage transaction. Rather, they arise out of Plaintiffs' respective and unrelated, individual mortgage transactions."); *see also Atkins v. Smalbach*, 2015 WL 1138456, at *4 (M.D. Fla. Mar. 13, 2015) (finding no logical relationship between facts for claims related to a Ponzi scheme against diverse defendant that aided the Ponzi scheme and claims not related to the Ponzi scheme against non-diverse architect of the Ponzi scheme and therefore severing and remanding claims against non-diverse defendant and retaining jurisdiction over diverse defendant). Defendants are correct that procedural misjoinder militates against a complete remand of the action.

Plaintiff argues that Defendants' separate participation in the Ponzi scheme is enough to establish a common set of facts between the claims. In support of this argument, Plaintiff unpersuasively cites to a Delaware bankruptcy case, *In re DBSI, Inc.*, 476 B.R. 413 (Bankr. D. Del. 2012). *In re DBSI* involved a complex bankruptcy proceeding, numerous affiliated parties, hundreds of similar bank transactions occurring around the same time, and, most significantly, the architect of the Ponzi scheme was a party. *Id.* Our case could not be more distinguishable. The architects of the Ponzi scheme are *not* parties. Instead, the pending defendants are only two unaffiliated "aiders and abetters," based on two distinct sets of transactions entered into at different times and in very different ways.

What is far more telling is that Plaintiff fails to allege any communication or direct concerted activity between these two Defendants, from which one could better argue that that joinder was proper. *Compare Barber v. America's Wholesale Lender*,

17

289 F.R.D. 364, 367 (M.D. Fla. Feb. 25, 2013) ("[t]he absence of concerted activity [is] fatal to Plaintiffs' attempt at joinder"), *with Black v. Cable News Network, Inc.*, 2016 WL 4443622, at *3 (S.D. Fla. July 19, 2016) (joinder proper because the "the statements made by Robinson are closely connected to the statements made by CNN in subject matter, in time, and in source.") and *Squire v. GEICO Gen. Ins. Co.*, 2012 WL 12864938, at *3 (S.D. Fla. Nov. 2, 2012) (denying remand and finding joinder proper because the defendants, at least in part, jointly refused multiple settlement opportunities.").

In sum, these circumstances paint a classic picture of procedural misjoinder, which warrants severance and a partial remand of the severed parties. Yet Plaintiff still takes issue with this remedy because it would be "absurd" to require a plaintiff to separately litigate against each co-defendant in a massive Ponzi scheme. Remanding the claims against ISC back to state court and maintaining federal jurisdiction over the claims against T-Mobile hardly goes that far. Rather, this would require Plaintiff to litigate separately two aiding and abetting cases with distinct operative facts. Presumably, the lead action against the actual Ponzi wrongdoers can proceed as a consolidated action elsewhere. But where these two tangential and logically unrelated actions (even if they have some overlapping witnesses) are joined as one, Plaintiff runs afoul of the text and purpose of Rule 20. Severance is certainly warranted. *See Barber*, 289 F.R.D. at 369 ("When, as here, judicial economy is not served by joining claims, severance is appropriate.") (citing *U.S. v. Timmons*, 672 F.2d 1373, 1380 (11th Cir. 1982)). And because Plaintiff fails to allege any facts

directly connecting the claims against Defendants, the attempted joinder is unreasonable and thus 'egregious' enough to constitute procedural misjoinder under Rule 20. Severance followed by remand only of the non-diverse defendant is also appropriate. *See M.W.*, 2015 WL 1311029, at *5 ("[T]he Court holds that the attempted joinder of non-diverse defendants on the basis of wholly disconnected claims is unreasonable, and constitutes a fraudulent misjoinder. Accordingly, the motion to remand must be denied as to Plaintiffs' claims against the [diverse defendants].").

Plaintiff's protests also ring quite hollow given the well-documented history of Ponzi scheme litigation involving cases far more vast and far more complex than this one. In those cases, a federal court did not consolidate all aiding and abetting defendants into one action for the sake of pragmatism. There is, in short, no Ponzi exception to the Court's subject matter jurisdiction and to the Federal Rules of Civil Procedure.[8]

---

[8]       This notion that absurdity and practicality should be our guideposts is belied, for instance, by the Bernie Madoff ponzi scheme litigation, where aiding and abetting cases were filed and adjudicated in state and federal courts across the country, including New York, Florida, Texas, California, Connecticut, Massachusetts, and Pennsylvania. L. Zweifach, *Recent Developments in Ponzi Scheme Litig.,* PLI Corporate Law and Practice, Ch. 3 at 21 (Oct. 2010) (available at www.pli.edu) (also summarizing history of litigation in multiple other complex Ponzi scheme cases). No one suggested that all that aiding and abetting litigation should be filed in one federal action, regardless of subject matter jurisdiction principles. And indeed in one of those many cases our court rejected related practical arguments when other jurisdictional principles prevented joinder of multiple similarly situated defendants. *See In Re Banco Santander Secs.-Optimal Litig.,* 732 F. Supp. 2d 1305 (S.D. Fla. 2010).

Plaintiff's motion to remand [D.E. 9] should therefore be denied as to T-Mobile[9] and granted as to ISC.  Pursuant to Rule 21, all claims against ISC should be severed and remanded.  The claims against T-Mobile should proceed based on this Court's diversity jurisdiction. *See id.* at *6 (severing and remanding claims against non-diverse defendants back to state court after determining there was a possible cause of action against non-diverse defendants but finding defendants were procedurally misjoined under Rule 20); *Barber*, 289 F.R.D. at 367 (severing claims when finding procedural misjoinder).

## IV.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Plaintiff's motion [D.E. 9] be **DENIED** as to T-Mobile and **GRANTED** as to ISC, with all claims against this Florida defendant **SEVERED** and **REMANDED** to the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.  Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g.,*

---

[9]     As such, Plaintiff's request for attorneys' fees against T-Mobile is **DENIED**.

*Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 13th day of January, 2020.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge