## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.  20-24012-Civ-GAYLES/TORRES

SOLAR ECLIPSE INVESTMENT
FUND VII, LLC *et al.*,

  Plaintiffs

v.

T-MOBILE USA, INC.,
INTERNATIONAL SPEEDWAY
CORPORATION, MARSHALL &
STEVENS, INC.,

  Defendants.

_____/

## REPORT AND RECOMMENDATION
## ON T-MOBILE USA, INC.'S MOTION TO DISMISS
## THE CONSOLIDATED AMENDED COMPLAINT

This matter is before the Court on T-Mobile USA, Inc.'s ("T-Mobile" or "Defendant") motion to dismiss thirty Solar Eclipse Investment Fund LLCs', ("Plaintiffs") consolidated amended complaint. [D.E. 68]. Plaintiffs responded to T-Mobile's motion on December 22, 2021 [D.E. 70], to which T-Mobile replied on January 12, 2022. [D.E. 74]. Therefore, T-Mobile's motion to dismiss is now ripe for disposition. After careful consideration of the motion, response, relevant authorities, and this case's procedural history, T-Mobile's motion to dismiss should be **GRANTED with prejudice.**[1]

---

[1]  On November 5, 2020, the Honorable Darrin P. Gayles referred all pretrial matters to the undersigned Magistrate Judge for disposition.  [D.E. 25].

## I.     BACKGROUND

### A. _Factual Background_

Plaintiffs are a group of investment funds that poured hundreds of millions of dollars into an enterprise that purported to manufacture and deploy mobile solar generators ("MSGs").  Jeff and Paulette Carpoff (the "Carpoffs") and their company – DC Solar Distribution Inc. and its related entities ("DC Solar") – were the central figures that orchestrated a $2.5 billion dollar Ponzi scheme to provide a temporary source of electrical power to customers.  DC Solar offered investment opportunities to third party investors to purchase and lease the MSGs in return for valuable tax and financial benefits.

Plaintiffs paid approximately 30% of the sale price for each MSG between 2011 and 2018 (worth approximately $45,000 each) as a down payment and issued a promissory note to DC Solar for the remaining amount.  Plaintiffs leased the MSGs back to DC Solar and then DC Solar leased the MSGs to third parties, such as T-Mobile. T-Mobile used the MSGs as emergency power for cellular towers and International Speedway Corporation ("ISC") used them to power light stands at its racetracks.  Plaintiffs were attracted to these investments, in part, because DC Solar had long-term lease agreements with these defendants.  This allowed for an accurate valuation of the MSGs, provided Plaintiffs with revenue to pay off the promissory notes, and showed that DC Solar had reputable business partners.

However, many of the MSGs that DC Solar purported to manufacture never existed.  The Carpoffs and several other co-conspirators used DC Solar as a vehicle

to defraud Plaintiffs and other investors.  And some co-conspirators have been charged with, and pled guilty to, federal charges.[2]  DC Solar is now part of bankruptcy proceedings pending in the United States Bankruptcy Court for the District of Nevada.

T-Mobile is a publicly traded wireless network operator incorporated in Delaware with a principal place of business in Washington State.  A T-Mobile employee, Alan Hansen ("Hansen"), began T-Mobile's relationship with the Carpoffs in 2012 when the company looked to save money on backup generators during power outages.  T-Mobile started to rent MSGs from DC Solar in 2014 pursuant to short-term, as-needed agreements.

Unbeknownst to T-Mobile, in September 2015, DC Solar presented Hansen with a contract that would purportedly require T-Mobile to lease 1,000 MSGs at a rate of $1,100 per month for ten years, totaling $130 million over the lease's lifespan ("The Lease").  Without the authority to do so, Hansen signed this lease while concealing its existence from T-Mobile altogether.  Plaintiffs allege, however, that prior to the signing, T-Mobile knew it would not honor the agreement and would instead continue to only rent MSGs on a short-term, as-needed basis.  Plaintiffs claim that T-Mobile and DC Solar used the lease to induce them to invest in MSGs.

---

[2]     Mr. Hansen pled guilty to fraud and, according to his plea agreement, he executed a contract with DC Solar in September 2015 for T-Mobile to lease one thousand MSGs in exchange for a one-million-dollar payout.  *See* Hansen Plea Agreement, at A-1, *U.S. v. Hansen*, No. 20-cr-00016 [ECF 3 No. 16] (E.D. Cal. July 28, 2020) (incorporated as [D.E. 14-1).  The purpose of the contract was to induce funds to invest more money in DC Solar's illusory fleet of MSGs.  *Id*.

### B. *Procedural Background*

This is the first of two consolidated lawsuits filed by or on behalf of a group of thirty limited liability companies, both of which were filed either directly by the LLCs or through a receiver.  Both actions were filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and subsequently removed to this Court.  In both cases, Plaintiffs moved to remand back to state court, which this Court denied each time.  [D.E. 36]; *see also* D.E. 30, *Solar Eclipse Fund VII, LLC et al. v. T-Mobile USA, Inc.*, No. 20-25257 (S.D. Fla.).

In the separate action, T-Mobile filed a motion to dismiss, which this Court granted without prejudice.  Among the deficiencies present in the first complaint, Plaintiffs (1) failed to allege specific misrepresentations made by T-Mobile; (2) failed to allege that T-Mobile's statements were concealed contrary to any duty to disclose; (3) failed to allege T-Mobile's actual knowledge of the underlying fraud; (4) failed to allege how T-Mobile benefitted from its employee's concealed actions; and (5) failed to meet rule 8(a), 9(b), and 12(b)(6) pleading standards. *See* D.E. 48, 50, *Solar Eclipse Fund VII, LLC et al v. T-Mobile USA, Inc.,* No. 1:20-cv-25257 (S.D. Fla.).

Following the dismissal, the Court joined both cases and instructed Plaintiffs to file a consolidated amended complaint to remedy any pleading deficiencies.  *See Id.* at [D.E. 53]. Plaintiffs filed a consolidated amended complaint [D.E. 68] on December 13, 2021, against Defendants with five causes of action: (1) fraudulent misrepresentation; (2) fraudulent concealment; (3) aiding and abetting fraud; (4) aiding and abetting conversion; and (5) negligent misrepresentation. Plaintiffs assert

that T-Mobile is liable because Hansen's actions are imputed to the company. T-Mobile seeks dismissal of these allegations for, among other things, a failure to meet Rule 9(b) standards.

## II. APPLICABLE PRINCIPLES AND LAW

In ruling on a motion to dismiss, the Court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the plaintiffs." *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)). The Court must also "limit[] its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)) (internal quotation marks omitted). But "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [the plaintiff]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual content gives a claim facial plausibility. *Id*. "A claim has facial plausibility when the

pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). But facial plausibility, alone, may not be enough.  A complaint states a claim capable of surviving a motion to dismiss if "that inference alone would . . . entitle [the claimant] to relief" under the legal theory supplied to bring the claim.  *Id* at 682.  In other words, a 12(b)(6) motion to dismiss "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570).

In addition, where a cause of action sounds in fraud, a plaintiff must meet the heightened pleading requirements under Federal Rule of Civil Procedure 9(b).  *See U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.,* 290 F.3d 1301, 1309-10 (11th Cir. 2002); *Gayou v. Celebrity Cruises, Inc.*, 2012 WL 2049431, at *3 (S.D. Fla. June 5, 2012).  Rule 9(b) provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" but that "[m]alice, intent, knowledge, and other conditions of a person's mind shall be averred generally."  *Fed. R. Civ. P. 9(b)*.  Rule 9(b) is satisfied if a plaintiff pleads:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).

6

### III. ANALYSIS

T-Mobile seeks to dismiss all five counts in Plaintiffs' Amended Complaint pursuant to Fed. R. Civ. P. 8(a), 9(b), and 12(b)(6).  T-Mobile asserts that the claims are substantively deficient and that, at minimum, Plaintiffs once again fail to satisfy basic pleading requirements.

In the Amended Complaint, Plaintiffs severed their previous "Fraudulent Misrepresentation/Concealment" claim into two separate counts and added one count of Aiding and Abetting Conversion.  In granting T-Mobile's motion to dismiss the original complaint, this Court found particularly fatal that Plaintiffs did not allege T-Mobile's actual knowledge of Hansen's activities with DC Solar.  Since every single claim in the Amended Complaint requires that Plaintiffs plead an element of actual knowledge to hold T-Mobile liable, we will first consider the dispositive issue of whether Plaintiffs properly allege actual knowledge on T-Mobile's end.  We will then analyze each count to determine if other grounds warrant its dismissal.

### A. Whether the Complaint properly imputes Hansen's knowledge of the fraud to T-Mobile

Plaintiffs' opposition to T-Mobile's motion to dismiss rests largely on an attempt to equate Hansen – a former T-Mobile employee who admitted to secretly engaging in criminal activity – with T-Mobile itself.  Plaintiffs argue that T-Mobile had actual knowledge of the sham lease on three grounds: first, that T-Mobile gave Hansen actual authority to sign the fraudulent lease [D.E. 57 ¶¶ 6, 50, 53, 113]; second, that Hansen had apparent authority to do so [*Id.*]; and third, that "T-Mobile is vicariously liable for Hansen's acts" under the doctrine of *respondeat superior* [D.E.

57 ¶ 76; D.E. 70, p. 18].  As will be discussed below, all three theories fail as a matter of law.

Plaintiffs once again direct the Court's attention to Rule 9(b), claiming that it "does not require a plaintiff to allege specific facts related to the defendant's state of mind" and that "knowledge[] and other conditions of a person's mind[] may be pled generally." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 137 (11th Cir. 2008).  But as we explained in the previous R&R, a plaintiff must do more than make conclusory allegations to support a fraud-based claim; a plaintiff is still required "to allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, INC.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (affirming dismissal of case where shareholder failed to plead fraud with sufficient particularity against bank corporation); s*ee also Nigerian Nat'l petroleum Corp. v. Citibank, N.A.*, No. 98 Civ. 4960, 1999 WL 558141 (granting motion to dismiss where bank's knowing disregard of several indications of fraud, including transfer of funds from a company's account to a personal account, did not amount to bank having actual knowledge of the fraudulent scheme); *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995) (holding that a plaintiff must "provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent").  Here, Plaintiffs once again treat this case as a negligence case and thus fail to allege actual knowledge with the specificity required by Rule 9(b) for a fraud claim.

### 1.  *T-Mobile did not give Hansen actual authority to sign the lease*

Plaintiffs assert that, even though T-Mobile had no advanced knowledge of Hansen's criminal conduct, Hansen was T-Mobile's agent under a theory of actual authority.  [D.E. 57 ¶¶ 6, 50, 53, 113].  To plead an actual agency relationship, a plaintiff must allege "(1) acknowledgment by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent." *Ilgen v. Henderson Properties, Inc.*, 683 So.2d 513, 515 (Fla. 2d DCA 1996) (citing *Goldschmidt v. Holdman*, 571 So. 2d 422, 424 n. 5 (Fla. 1990)).  Additionally, where a complaint "pleads no facts that support its conclusory allegations as to authority," a plaintiff's "agency theory is unavailing." *Azure, LLC v. Figueras Seating U.S.A, Inc.*, No. 12-cv-23670, 2013 WL 12093811, at *3 (S.D. Fla. July 18, 2013) (granting motion to dismiss based on plaintiffs' failure to properly allege actual authority).

In dismissing the original complaint, this Court found that "Plaintiffs never allege actual knowledge."  Case No. 20-25257, [D.E. 48 at 13].  Here, the Amended Complaint fares no better.  It pleads no new or different facts, offering only naked conclusions that "Hansen's acts are T-Mobile's acts" [D.E. 57 ¶¶ 61, 76. 118], and that Hansen possessed "actual and apparent authority."  [D.E. 57 ¶¶ 6, 50, 53, 113].  These bald legal conclusions are insufficient, especially when contradicted by other sources incorporated into the pleading.  *See Century Land Dev., L.P. v. FFL Dev., L.L.C.,* No. 07-14377-CIV, 2008 WL 1850753, at *3 (S.D. Fla. Apr. 24, 2008) (holding that allegations contradicting documents incorporated by reference need not be taken as

true).   Moreover, as stated in the Plea Agreement, "Hansen would not have had authority to sign the 2015 Telecom Company A Lease if it was genuine, and Hansen knew that at the time he signed."  [D.E. 68-1, at A-7].  Further, Plaintiffs admit that T-Mobile had no knowledge of Hansen's criminal conduct: "Had T-Mobile properly supervised its own employee . . . it would have discovered the fraudulent T-Mobile lease and prevented the fraud."  [D.E. 57 ¶ 76].  Following the logic of Plaintiffs' own account, therefore, T-Mobile could not have authorized actions of which it was unaware.  The Complaint does not allege otherwise, nor does it allude to any additional new facts that could possibly give rise to an actual authority theory.

### 2.   *Hansen did not have apparent authority to enter into a contract with DC Solar on behalf of T-Mobile*

The lynchpins of any claim of "apparent authority" are the manifestations made by the alleged principal that would give rise to a reasonable belief that the alleged agent had authority to act for the benefit of the principal.  *See Hosch v. Wachovia Bank, N.A.*, 815 F. App'x 352, 355 (11th Cir. 2020).  To allege apparent agency, a plaintiff must establish three elements: "(1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance upon such representation." *Lensa Corp. v. Poinciana Gardens Ass'n, Inc.*, 765 So. 2d 296, 298 (Fla. 4th DCA 2000).  A plaintiff's reliance must be based upon actions or statements *made by the principal,* rather than the purported agents "who often ingeniously create an appearance of authority by their own acts." *Taco Bell of California v. Zappone*, 324 So. 2d 121, 124 (Fla. 2d DCA 1975).  Additionally, "apparent authority exists only where the principal

creates the appearance of an agency relationship, and does not arise from . . . appearances created by the purported agent himself." *Wilder v. JPMorgan Chase Bank, N.A.*, No. 18-20820, 2018 WL 5629922, at *5 (S.D. Fla. Oct. 30, 2018) (dismissing complaint that "fails to allege that Plaintiff's belief that Defendant [ ] had authority to act for the benefit of Chase Bank was reasonable."). *See also, e.g., Ct-Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp., Ltd.,* No. 05-60055-CIV, 2011 WL 1232986, at *5 (S.D. Fla. Mar. 30, 2011) (holding that apparent agency theory fails when plaintiff fails to allege statements made by purported principal).

Contrary to all this binding precedent, Plaintiffs never allege that they relied on a representation by the principal — T-Mobile — but rather on a representation by Hansen himself. In the plea agreement, Hansen admits to concealing the sham lease from T-Mobile. *See* Plea Agreement. By merely imputing Hansen's knowledge to T-Mobile through circular statements such as "Hansen's acts are T-Mobile's acts" [D.E. 57 ¶ 118], Plaintiffs fail to establish the "who, what, when, where, and how" of the alleged fraud as required by Rule 9(b), thus dooming Plaintiffs' theory of liability based on apparent authority. *See Roessler v. Novak*, 858 So. 2d 1158, 1162 (Fla. 2d DCA 2003) (holding that apparent authority is not created by "subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself.") Moreover, Hansen was not conveying information to an innocent third party who might have believed that Hansen was acting on behalf of T-Mobile. Rather, Hansen was solicited by the other criminal actors in the DC Solar scheme to join their criminal activities, making the concept of

apparent authority inapplicable here.  Any misrepresentations made when signing the shame lease were between Hansen and the DC Solar agent who gave Hansen the fraudulent lease to sign.  *See* Plea Agreement, at A-7.

Further damaging Plaintiffs' theory of apparent authority, Florida law also provides that the knowledge of an agent is not imputed to a principal where the agent – even one nominally acting within the scope of his authority – has a "motive or interest in concealing the facts from his principal." *Lambert v. Heaton*, 134 So. 2d 536, 538-39 (Fla. 1st DCA 1961).  Such motive is present "when the agent is engaged in committing an independent fraudulent act."  *Id.* at 539; *see also, People's Downtown Nat. Bank v. Lawyers' Title Guard. Fund.*, 334 So. 2d 105, 107 (Fla. 2d DCA 1976) (holding that agent's knowledge may not be imputed to principal where agent "engages in a transaction in which the agent is personally interested.")  Thus, claims relying on the principal's knowledge must allege the principal's knowledge directly, not vicariously.  *See id.* at 109.  Here, Plaintiffs allege Hansen as the sole source of knowledge of the fraudulent lease.  Hansen's personal interest in the transaction, via his acceptance of a concealed $1,000,000 payment, prevents imputation of his knowledge to T-Mobile.  *See Lambert*, 134 So. 2d at 538-39; Plea Agreement at A-7.  Because Plaintiffs' entire theory of the case boils down to the simplistic notion that "Hansen's acts are T-Mobile's acts" [D.E. 57 ¶¶ 61, 76, 118], and Plaintiffs have not alleged sufficient facts in this second round of pleading, Plaintiffs have failed to plead Hansen's apparent authority under Florida law.

### 3. *T-Mobile is not liable for Hansen's actions under the doctrine of* <u>*respondeat superior*</u>

Under the doctrine of respondeat superior, "[a]n employer is vicariously liable for . . . the *negligent* acts of employees committed within the scope of their employment even if the employer is without fault." *Mercury Motors Express, Inc v. Smith*, 393 So.2d 545, 549 (Fla. 1981) (emphasis added). Where an employee commits an *intentional wrong* and not a mere act of negligence, however, a heightened standard of proof must be met to attach liability under respondeat superior. *See Perez v. Zazo*, 498 So. 2d 463, 465 (Fla. 3d DCA 1986) (holding that respondeat superior applies "only when that conduct in some way furthers the interests of the master or is at least motivated by a purpose to serve those interests, rather than the employee's own."). That standard of proof must be reflected in factual allegations in a complaint. That is where Plaintiff falters once again.

#### a. *Plaintiffs fail to plead that Hansen's actions are not entirely adverse to T-Mobile and that T-Mobile gained any benefit from the sham lease*

Contrary to Plaintiffs' assertion that the criminal nature of Hansen's conduct is "irrelevant" in determining whether T-Mobile is liable under respondeat superior [D.E. 70 at 11], this issue is in fact paramount to Plaintiffs' burden in pleading a plausible fraud theory in this case. As we held in the R&R granting T-Mobile's motion to dismiss the original complaint, Plaintiffs may impute Hansen's knowledge to T-Mobile through respondeat superior only insofar as his actions are not entirely adverse to T-Mobile. *See Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998). Entire adversity requires allegations that the agent's actions were neither

"intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation." *Id*. at 736. In other words, "imputation is permitted when an agent's actions were 'designed to turn the corporation into an 'engine of theft' against outsiders,' as opposed to when an agent took actions that diminished the assets of the corporation itself." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1096 (11th Cir. 2017) (quoting *Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. 3rd DCA 1992)).

Moreover, merely alleging the fact of employment is not enough to invoke respondeat superior in an intentional tort case; factual allegations that the employee's actions were not for his sole benefit are required to state a claim. *See Hosch*, 815 F. App'x at 355 (affirming motion to dismiss because bank employee's conversion of fraud proceeds for personal use precluded respondeat superior liability for employer). In granting T-Mobile's motion to dismiss the original complaint, this Court found relevant that Plaintiffs pleaded no plausible allegations as to how T-Mobile benefitted from Hansen's actions. We noted that, if anything, being associated with a fraudulent lease had a greater chance of hurting, rather than benefitting T-Mobile and its reputation.

The Amended Complaint responds by listing a myriad of allegations describing how T-Mobile purportedly benefitted from the sham lease. Plaintiffs allege that DC Solar (i) provided "substantial design, consulting and repair costs at reduced rates"; (ii) "provided 24-hour a day repair services to cell towers"; (iii) saved T-Mobile money because "for every hour a cell tower is down, T-Mobile lost substantial revenue"; and (iv) "replaced hundreds if not thousands of batteries in T-Mobile cell towers." [D.E. 57

14

¶¶ 56-57].  Contrary to Plaintiffs' assertions, however, the fully vetted 2012 vendor agreement indicates that DC Solar's business was limited to manufacturing, selling and leasing MSGs to serve as a source of temporary power when T-Mobile's cellular sites in the San Francisco region experienced power outages, on an as-needed basis. [D.E. 68-3].  Moreover, as T-Mobile points out, any benefit the company gained from DC Solar's services would have been derived from the already existing 2012 vendor agreement, not from the subsequent sham lease that Hansen concealed from T-Mobile.  Plaintiffs also claim that T-Mobile could advertise itself "as using clean energy" [*Id.* ¶ 54] but fail to back up their claim with any specificity whatsoever, once again falling short of Rule 9(b)'s heightened pleading standards.

### b. *Hansen's actions were outside his scope of employment, rendering respondeat superior liability to T-Mobile inapplicable*

Moreover, the Amended Complaint's concession of Hansen's acceptance of a substantial payment to secretly sign a fraudulent contract renders his actions outside the scope of his employment as recognized by numerous jurisdictions that precludes an employer's liability for the employee's actions.  *See, e.g., Heffernan v. Marine Midland Bank, N.A.*, 267 A.D.2d 83, 701 N.Y.S.2d 4 (1999) (granting bank's motion to dismiss where customers were induced by bank employee to invest in fake accounts, because scheme was outside employee's scope of employment and the bank could thus not be held vicariously liable); *Roberts v. 112 Duane Assocs., LLC*, 821 N.Y.S. 2d 33, 36 (N.Y. App. Div. 2006) (granting motion to dismiss where manager's acceptance of bribe to assist in improper transactions precluded employer liability under respondeat superior); *see also Ahmed v. Air France-KLM*, 165 F. Supp. 3d 1302,

1310 (S.D. Ga. 2016) (holding that respondeat superior liability could not attach to employer where employee took bribes from air passengers); *Commerce Bank of St. Joseph, N.A. v. State*, 251 Kan. 207, 215 (1992) (finding that "accepting a bribe cannot be considered within the scope" of employee's employment); *Melton v. U.S.*, 488 F. Supp. 1066, 1074 (D.D.C. 1980) (holding that "[u]nder no persuasive theory can [the employee's] involvement in a bribery scheme be regarded as furthering his employer's interests").

As any allegation plausibly demonstrating how Hansen's actions furthered T-Mobile's interests in any way are absent from the Amended Complaint, Plaintiffs fail to plead T-Mobile's vicarious liability for Hansen's actions and, thus, to impute Hansen's knowledge of the fraud to T-Mobile. Because all four of the Amended Complaint's fraud-based claims fail to meet the actual knowledge element, each one fails as a matter of law. However, it is worth addressing each count separately to analyze the validity of Plaintiffs' arguments and T-Mobile's case for dismissal.

### B. *Fraudulent Misrepresentation (Count One)*

Plaintiffs first allege that T-Mobile is liable for fraudulent misrepresentation. [D.E. 57 ¶¶ 72-80]. To state a claim for fraudulent misrepresentation, a plaintiff must show: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *In re Harris*, 3 F.4th 1339, 1349 (11th Cir. 2021) (quoting *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)).

Additionally, a fraudulent misrepresentation claim must satisfy the heightened Rule 9(b) standard and plead fraud with particularity, because "general allegations are not sufficient to satisfy Rule 9(b)." *Hesterly v. Royal Caribbean Cruises, Ltd.*, 2008 WL 11406184, at *8 (S.D. Fla. Aug. 6, 2008). "Rule 9(b) envisions that claims alleging fraud must state the 'who, what, where, when, and how' of the alleged fraud." *Porter v. Mainlands Sections 1&2 Civic Ass'n, Inc.*, 2015 WL 11198233, at *1 (S.D. Fla. Sept. 29, 2015). In the context of a fraudulent misrepresentation claim, "[t]his means that the plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiffs; and (4) what the defendants gained by the alleged fraud." *Ferrell v. Durbin*, 311 F. App'x 253, 258 (11th Cir. 2009).

### 1. *Plaintiffs properly plead a misrepresentation of material fact*

Here, Plaintiffs in fact satisfy the first element of fraudulent misrepresentation because they properly plead a false statement of material fact that they could have reasonably relied upon. To sustain their argument, Plaintiffs rely almost exclusively on two purported misrepresentations: first, the provisions of the sham lease signed by Hansen, and second, an August 2015 email from "T-Mobile's field operations manager" to an unnamed investor, claiming that T-Mobile's relationship with DC Solar had "exceeded expectations" and was "in good standing." [D.E. 57 ¶¶ 74, 75].

Looking first at the August 2015 email, it is clearly insufficient to form the basis for a fraudulent misrepresentation claim. In the amended complaint, Plaintiffs do not provide any requisite details about the email, including who wrote it to whom and how it detrimentally induced the Plaintiffs to invest in MSGs. This alone is insufficient for Rule 9(b) purposes. And as T-Mobile correctly notes in its motion and reply, Plaintiffs left this communication deliberately vague to omit a particularly important fact: this email was sent from Hansen to a GEICO employee, not to any of the investment funds.[3] Because this email was never directed toward any of the thirty Plaintiff LLCs, they could not have relied upon it as a misrepresentation.

We now turn our attention to Plaintiffs' second alleged misrepresentation, which involves the fraudulent lease Hansen signed on behalf of T-Mobile. Plaintiffs maintain that the sham contract, signed by Hansen, induced them to invest in the MSGs out of the belief that T-Mobile was locked into a long-term business arrangement with DC Solar. [D.E. 57]. T-Mobile contends that contracts cannot form the basis of a fraudulent misrepresentation claim "because failure to perform is not a claim sounding in tort," citing caselaw holding that a party may not recover in tort for a defendant's alleged failure to perform under a contract. [D.E. 74]. Yet, T-Mobile is misguided on this point: Plaintiffs do not allege a breach of contract, but rather argue that if the entirety of a contract is revealed to be a sham, then it may form the basis of a fraudulent misrepresentation claim by someone who relied on its terms.

---

[3] The Receivership Complaint previously asserted a similar allegation in Paragraph 59, stating that the email was sent from Hansen to a person named Todd Prigal, a GEICO employee.

*See, e.g., Output, Inc. v. Danka Business Systems, Inc.*, 991 So.2d 941, 942-943 (Fla. 4th DCA 2008) (holding that plaintiff may state cause of action for fraudulent misrepresentation where the alleged misrepresentation was included in a later contract to which the defendant was not a party).   Here, Plaintiffs have properly pleaded that Hansen knew that DC Solar intended to present the sham lease to potential investors under the guise of a long-term business arrangement with T-Mobile. [D.E. 57].   This alone constitutes a plausible false statement of material fact that Plaintiffs could have reasonably relied upon.

### 2. *Plaintiffs fail to plead the second, third and fourth elements of fraudulent misrepresentation*

For the reasons discussed in the first section, Plaintiffs fail to allege a plausible legal basis to impute Hansen's knowledge to T-Mobile.   Given that Plaintiffs fail to satisfy the actual knowledge requirement of the fraudulent misrepresentation claim, there is no need to consider whether T-Mobile induced Plaintiffs to invest in MSGs. However, it is worth noting that at least thirteen of the Plaintiffs' claim for fraudulent misrepresentation would fail solely on inducement grounds.   As T-Mobile pointed out in its motion and response, thirteen of the Plaintiff LLCs invested prior to the execution date of the sham contract between Hansen and DC Solar.   [D.E. 68]. Plaintiffs themselves indicate in the Amended Complaint that Solar Eclipse Funds, III, V, VI, X, XI, XII, XIV, XV, XVI, XVIII, and XXXV all invested in DC Solar before September 11, 2015, the date that the sham lease was signed and purportedly lured them to enter the contract.   [D.E. 57 ¶¶ 23-48].   Additionally, the original complaint filed in the separate action indicated that Funds VII and VIII invested in MSGs by

DC Solar in 2013 and 2014, respectively, which Plaintiffs have surreptitiously omitted from the Amended Complaint. *See* D.E. 1-2, ¶¶ 36, 37, *Solar Eclipse Inv. Fund VII, LLC et al. v. T-Mobile USA, Inc.*, No. 20-25257. On this basis alone, thirteen of the Plaintiffs cannot claim inducement by T-Mobile, irrespective of Hansen's knowledge being imputed to the rest of the company.

Because Plaintiffs have failed to impute Hansen's knowledge through bald and conclusory allegations that do not rise to Rule 9(b) pleading standards after having the opportunity to bolster their complaint, T-Mobile's motion to dismiss Count One should be **GRANTED with prejudice.**

### C. *Fraudulent Concealment (Count Two)*

Next, Plaintiffs allege one count of fraudulent concealment. [D.E. 57 ¶¶ 81-93]. Under Florida law, the elements of fraudulent concealment are identical to those of fraudulent misrepresentation, with the additional element of a duty to disclose: "(1) the defendant concealed or failed to disclose a material fact; (2) the defendant knew or should have known the fact should be disclosed; (3) the defendant knew her concealment or failure to disclose would induce the plaintiff to act; (4) the defendant had a duty to disclose the fact; and (5) the plaintiff detrimentally relied on the misinformation." *Dunkel v. Hedman*, No. 3:15-CV-948-J-34PDB, 2016 WL 4870502, at *13 (M.D. Fla. Aug. 17, 2016), *report and recommendation adopted*, No. 3:15-CV-948-J-34PDB, 2016 WL 4765739 (M.D. Fla. Sept. 13, 2016).

Here, the Amended Complaint fails to state a claim for fraudulent concealment for the same reasons laid out in Count One: Plaintiffs fail to impute Hansen's

knowledge to T-Mobile.  Accordingly, Plaintiffs cannot demonstrate that T-Mobile owed a duty of care to any of the thirty LLCs, and the claim for fraudulent concealment fails as a matter of law.  Assuming that T-Mobile's actual knowledge of the fraud is not met for the same reasons set forth in Count One, we will also look at why Plaintiffs failure to plead T-Mobile's duty of care also warrants dismissal of this Count.

It is well established that "a cause of action does not lie for fraudulent concealment or non-disclosure except where there is a duty to disclose." *S.K.Y. Mgmt. LLC v. Greenshoe, Ltd.*, No. 06-21722, 2007 WL 9701121, at *4 (S.D. Fla. Mar. 11, 2007) (citing *Cola v. Allstate Ins. Co.*, 131 F. App'x 134, 136 (11th Cir. Apr. 18, 2005)); *Broward Motorsports, LLC*, 2018 WL 1072211, at *3 (explaining that to state a claim, "a plaintiff must allege that . . . the defendant had a duty to disclose.").

Plaintiffs fail to allege any such duty here.  The only purported communication that the Amended Complaint alleges is the August 2015 email sent by Hansen, which did not involve any of the Plaintiffs.  As such, the Amended Complaint does not identify any direct dealings between T-Mobile and the thirty LLCs, and there is no basis for the existence of any duty T-Mobile had to them.  By failing to impute Hansen's knowledge to T-Mobile, the Amended Complaint contains no factual allegations suggesting that T-Mobile knew or had reason to know that any of the thirty LLCs existed.  Accordingly, Plaintiffs fail to state a claim for fraudulent concealment and T-Mobile's motion to dismiss Count Two should be **GRANTED with prejudice**.

### D. *Aiding and Abetting Fraud (Count Three)*

For count three, Plaintiffs reallege their aiding and abetting fraud dismissed in the original complaint.  [D.E. 57 ¶¶ 94-104].  "To state a cause of action for aiding and abetting fraud, a plaintiff must allege (1) there existed an underlying fraud; (2) the defendant had knowledge of the fraud; and (3) the defendant provided substantial assistance to advance the commission of the fraud."  *Platinum Estates, Inc. v. T.D. Bank, N.A.*, No. 11-60670-CIV, 2012 WL 760791, at *3 (S.D. Fla. Mar. 8, 2012).  As with other causes of action sounding in fraud, "[p]leadings involving allegations of aiding and abetting in fraud. . . . must comply with Rule 9(b)'s heightened pleading standards."  *Banc of Am. Sec. LLC v. Stott*, No. 04-81086, 2005 WL 8156027, at *5 (S.D. Fla. Aug. 30, 2005) (collecting cases).  In order to do so, a plaintiff must plead "precisely what statements were made in what documents or oral representations," "the content of such statements, and the manner in which they misled the plaintiff," and "what the defendants obtained as a consequence of the fraud."  *Id*.

For the same reasons set forth in Counts One and Two, Plaintiffs have failed to satisfy the second element of aiding and abetting fraud: that T-Mobile had actual knowledge of the underlying fraud.  While we need not consider whether T-Mobile's conduct amounted to substantial assistance based on its lack of actual knowledge, it is worth noting that Plaintiffs merely assume the substantial assistance ("[w]ithout T-Mobile's substantial assistance in providing the fraudulent T-Mobile lease . . . the fraud would never have gotten off the ground," [D.E. 57 ¶ 67], but nowhere allege supporting facts.  This Court previously found that "mere inaction constitutes

substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." Case No. 20-25257, [D.E. 48].. Since the Amended Complaint fails to demonstrate any relationship between T-Mobile and the Plaintiff LLCs besides failed attempts to impute Hansen's knowledge to the company, no fiduciary duty exists. Accordingly, T-Mobile's motion to dismiss count three should be **GRANTED with prejudice.**

### E. *Aiding and Abetting Conversion (Count Four)*

For their fourth claim, Plaintiffs added one count of aiding and abetting conversion. [D.E. 57 ¶¶ 105-110]. To properly state a claim for aiding and abetting conversion, Plaintiffs must allege "(1) an underlying [conversion] on the part of the primary wrongdoer; (2) knowledge of the underlying [conversion] by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the [conversion] by the alleged aider and abettor." *Taubenfeld v. Lasko*, 324 So. 3d 529, 544 (Fla. 4th DCA 2021) (quoting *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012)). While this count is not subject to Rule 9(b) standards because it does not sound in fraud, as with any claim, Plaintiffs must still allege plausible facts to support it, and mere conclusory allegations will not suffice. *See Ashcroft*, 556 U.S. at 678.

Plaintiffs state that "[t]he Carpoffs stole the Funds' money and used it for their personal use." [D.E. 57 ¶ 106]. Even if one were to find this statement sufficient to allege conversion by the Carpoffs, Plaintiffs fail to properly allege the second and third elements of an aiding and abetting conversion claim. For the second element,

23

Plaintiffs merely allege that "T-Mobile had actual knowledge that the Carpoffs misappropriated and converted funds belonging to the Funds." [D.E. 57 ¶ 107]. Plaintiffs attempt to back this up by claiming that "where the tort is committed at least partly to serve the employer or is committed within the scope of his employment[,] the employer can be held liable." *Moecker v. Honeywell Intern., Inc.*, 144 F. Supp. 2d 1291, 1312 (M.D. Fla. 2001). However, as discussed above, Plaintiffs fail to demonstrate how (a) any of Hansen's illegal activities were within the scope of his employment, and (b) how T-Mobile gained any benefit from the fraudulent lease. Without these two elements, Plaintiffs cannot allege T-Mobile's actual knowledge.

As to the third element, Plaintiffs provide a similar list of conclusory allegations concerning actions allegedly taken by T-Mobile in support of DC Solar's efforts to convert funds for the Carpoffs. *See e.g.*, [D.E. 57 ¶ 108] (attributing to T-Mobile a list of actions, including "[f]raudulently signing the T-Mobile Lease"; "[a]greeing to allow the Fraudsters to use T-Mobile's name and reputation in promoting investment in DC Solar Solutions"; and "pretending that T-Mobile had leased more than $130 million of MSGs from DC Solar Distribution."). But as we noted above, and as evinced by Hansen's plea agreement, those actions were unilaterally undertaken by Hansen, completely unbeknownst to T-Mobile. [D.E. 68-1, at A-7] (noting that Hansen signed the lease in exchange for a $1,000,000 bribe; that Hansen "did not engage a lawyer, his supervisor, or any other person at [T-Mobile]"; that Hansen "did not keep a copy of the [lease] . . . for records preserved by [T-Mobile]"; and that Hansen "would not have had authority to sign the [lease] if

it was genuine, and [that] Hansen knew that at the time he signed it."). In sum, the Amended Complaint fails to plead this count with supporting, non-conclusory factual allegations, as required by Rule 8(a). *See S&B/BIBB Hines PB 3 Joint Venture v. Progress Energy Fla., Inc.*, 365 F. App'x 202, 207 (11th Cir. 2010) (affirming dismissal of a claim for aiding and abetting where the allegations on the "substantial assistance or encouragement" element were little more than "conclusory allegations"); *Lawrence v. Bank of Am.*, N.A., No. 8:09-CV-2162-T-33TGW, 2010 WL 3467501, at *5 (M.D. Fla. Aug. 30, 2010), *aff'd,* 455 F. App'x 904 (11th Cir. 2012), and *aff'd,* 455 F. App'x 904 (11th Cir. 2012) (dismissing aiding and abiding count where Plaintiffs only made "conclusory allegations that [Defendant] permitted [third parties] to engage in atypical [ ] or dubious and suspicious [ ] transactions without reporting them to the proper authorities."). Accordingly, count four should be **DISMISSED.**

### F.  *Negligent Misrepresentation (Count Five)*

In their final count, Plaintiffs accuse T-Mobile of negligent misrepresentation. To state a cause of action for negligent misrepresentation, a plaintiff must allege that: "(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation. *See Florida Women's Med. Clinic, Inc. v. Sultan*, 656 So. 2d 931 (Fla. 4th DCA 1995) (quoting Baggett v. Electricians Local 915, 620 So. 2d 784, 786 (Fla. 2d DCA 1993)).

As discussed above, *see supra* Section III (A), Plaintiffs cannot establish the second element of this cause of action because the Amended Complaint fails to plead with sufficiency any knowledge on the part of T-Mobile.  Again, Plaintiffs' claim is premised on an attempt to equate Hansen—a former T-Mobile employee who admitted to secretly engaging in criminal activity—with T-Mobile itself.  However, Plaintiffs' agency and respondeat superior theories fail, and the Amended Complaint is devoid of non-conclusory allegations sufficient to impute any alleged misrepresentation to T-Mobile.  Absent the factual links that can make the action and statements by Hansen attributable to T-Mobile, Plaintiffs cannot support a negligent misrepresentation claim.  *See Murray v. ILG Techs., LLC*, 378 F. Supp. 3d 1227, 1251 (S.D. Ga. 2019), *aff'd,* 798 F. App'x 486 (11th Cir. 2020) (Plaintiffs could not state negligent misrepresentation claim where the communication they received was from a third party, not Defendants); *Erler v. Hasbro, Inc.*, No. 1:19-CV-02658-AT, 2020 WL 8911040 (N.D. Ga. Dec. 11, 2020), reconsideration denied, No. 1:19-CV-2658-AT, 2021 WL 2492465 (N.D. Ga. Mar. 4, 2021) (dismissing negligent misrepresentation claim where Plaintiffs failed to impute the alleged misrepresentations to Defendants).  Accordingly, Defendant's motion to dismiss count five should be **GRANTED with prejudice**.

## IV. CONCLUSION

In the previous report and recommendation adopted by the District Judge, we provided ample explanation as to the deficiencies present in Plaintiffs' original complaint, notably that none of the counts met neither Rule 8(b) nor Rule 9(b)

pleading standards. Rather than supporting the Amended Complaint with additional plausible factual allegations, Plaintiffs have instead filled it with nothing more than conclusory allegations that do not pass muster to plead viable intentional torts.  As this Court has given Plaintiffs the opportunity to correct their pleading deficiencies to meet minimal facial plausibility and they have failed to do so, this Court accordingly **RECOMMENDS** that T-Mobile's motion to dismiss [D.E. 68] be **GRANTED with prejudice**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have **seven (7) days** within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.  28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 6th day of September, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge