## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.  20-24012-Civ-GAYLES/TORRES

SOLAR ECLIPSE INVESTMENT
FUND VII, LLC *et al.*,

     *Plaintiffs,*

v.

T-MOBILE USA, INC.,
INTERNATIONAL SPEEDWAY
CORPORATION, MARSHALL &
STEVENS, INC.,

     *Defendants.*

_____/

## REPORT AND RECOMMENDATION
## ON T-MOBILE USA, INC.'S MOTION TO DISMISS
## THE SECOND AMENDED COMPLAINT

This matter is before the Court on T-Mobile USA, Inc.'s ("T-Mobile" or "Defendant") motion to dismiss thirty Solar Eclipse Investment Fund LLCs', ("Plaintiffs") consolidated second amended complaint. [D.E. 89].  Plaintiffs responded to T-Mobile's motion [D.E. 90], to which T-Mobile replied.  [D.E. 93].  Therefore, T-Mobile's motion to dismiss is now ripe for disposition.  After careful consideration of the motion, response, relevant authorities, and this case's procedural history, T-Mobile's motion to dismiss should be **DENIED.**[1]

---

[1]    On November 5, 2020, the Honorable Darrin P. Gayles referred all pretrial matters to the undersigned Magistrate Judge for disposition.  [D.E. 25].

# I.   BACKGROUND

## A. *Factual Background*

Plaintiffs are a group of investment funds that poured hundreds of millions of dollars into an enterprise that purported to manufacture and deploy mobile solar generators ("MSGs").  Jeff and Paulette Carpoff (the "Carpoffs") and their company – DC Solar Distribution Inc. and its related entities ("DC Solar") – were the central figures that orchestrated a $2.5 billion dollar Ponzi scheme to provide a temporary source of electrical power to customers.  DC Solar offered investment opportunities to third party investors to purchase and lease the MSGs in return for valuable tax and financial benefits.

Plaintiffs paid approximately 30% of the sale price for each MSG between 2011 and 2018 (worth approximately $45,000 each) as a down payment and issued a promissory note to DC Solar for the remaining amount.  Plaintiffs leased the MSGs back to DC Solar and then DC Solar leased the MSGs to third parties, such as T-Mobile. T-Mobile used the MSGs as emergency power for cellular towers and International Speedway Corporation ("ISC") used them to power light stands at its racetracks.  Plaintiffs were attracted to these investments, in part, because DC Solar had long-term lease agreements with these defendants.  This allowed for an accurate valuation of the MSGs, provided Plaintiffs with revenue to pay off the promissory notes, and showed that DC Solar had reputable business partners.

However, many of the MSGs that DC Solar purported to manufacture never existed.  The Carpoffs and several other co-conspirators used DC Solar as a vehicle to defraud Plaintiffs and other investors.

T-Mobile is a publicly traded wireless network operator incorporated in Delaware with a principal place of business in Washington State.  A T-Mobile employee, Alan Hansen ("Hansen"), began T-Mobile's relationship with the Carpoffs in 2012 when the company looked to save money on backup generators during power outages.  T-Mobile started to rent MSGs from DC Solar in 2014 pursuant to short-term, as-needed agreements.

In September 2015, DC Solar presented Hansen with a contract that would purportedly require T-Mobile to lease 1,000 MSGs at a rate of $1,100 per month for ten years, totaling $130 million over the lease's lifespan ("The Lease").  Hansen signed this lease as an employee of T-Mobile. Plaintiffs claim that T-Mobile and DC Solar used the lease to induce them to invest in MSGs.

### B. *Procedural Background*

This is the first of two consolidated lawsuits filed by or on behalf of a group of thirty limited liability companies, both of which were filed either directly by the LLCs or through a receiver.  Both actions were filed in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, and subsequently removed to this Court.  In both cases, Plaintiffs moved to remand back to state court, which this Court denied each time.  [D.E. 36]; *see also* D.E. 30, *Solar Eclipse Fund VII, LLC et al. v. T-Mobile USA, Inc.*, No. 20-25257 (S.D. Fla.).

In the separate action, T-Mobile filed a motion to dismiss, which this Court granted without prejudice.  Among the deficiencies present in the first complaint, Plaintiffs (1) failed to allege specific misrepresentations made by T-Mobile; (2) failed to allege that T-Mobile's statements were concealed contrary to any duty to disclose; (3) failed to allege T-Mobile's actual knowledge of the underlying fraud; (4) failed to allege how T-Mobile benefitted from its employee's concealed actions; and (5) failed to meet rule 8(a), 9(b), and 12(b)(6) pleading standards. *See* D.E. 48, 50, *Solar Eclipse Fund VII, LLC et al v. T-Mobile USA, Inc.,* No. 1:20-cv-25257 (S.D. Fla.).

Following the dismissal, the Court joined both cases and instructed Plaintiffs to file a consolidated amended complaint to remedy any pleading deficiencies.  *See Id.* at [D.E. 53]. Plaintiffs filed a consolidated amended complaint [D.E. 68] on December 13, 2021, against Defendants with five causes of action: (1) fraudulent misrepresentation; (2) fraudulent concealment; (3) aiding and abetting fraud; (4) aiding and abetting conversion; and (5) negligent misrepresentation.  T-Mobile moved to dismiss the amended complaint, and this Court granted the motion as to all counts [D.E. 79, 84].

Although the Report and Recommendation recommended dismissal of all counts with prejudice, the District Judge approved the Report only in part and grant Plaintiffs one final opportunity to replead a viable claim. The order highlighted the Report's misplaced reliance on the contents of a plea agreement and did not adopt the parts of the Report that relied on that document. But, the order agreed with the overall conclusion that the complaint as is did not state a claim, in part because it

was a shotgun pleading that lacked the requisite specificity.[2]  The complaint was dismissed without prejudice.

On October 6, 2022, Plaintiffs filed the consolidated Second Amended Complaint ("SAC").  Notably, the SAC no longer asserts fraud or negligence claims. All counts were deleted except one aiding and abetting conversion claim.  T-Mobile in response seeks dismissal of this one remaining claim for Plaintiffs' failure to satisfy Rule 8(a) standards.

## II. APPLICABLE STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court takes the allegations in the complaint as true and construes the allegations "in the light most favorable to the plaintiffs." *Rivell v. Private Health Care Systems, Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir. 2002)).  The Court must also "limit[] its consideration to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)) (internal quotation marks omitted).

---

[2]     The Eleventh Circuit generally considers a complaint to be a shotgun pleading if it: (1) "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) fails to "separate[e] into a different count each cause of action or claim for relief"; or (4) "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland v. Palm Beach Cnty. Sheriff's Off*, 792 F.3d 1313, 1320-23 (11th Cir. 2015).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual content gives a claim facial plausibility. *Id.* "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A 12(b)(6) motion to dismiss "is granted only when the movant demonstrates that the complaint has failed to include 'enough facts to state a claim to relief that is plausible on its face.'" *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570).

### III. ANALYSIS

T-Mobile seeks to dismiss the sole count remaining in Plaintiffs SAC pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6). T-Mobile asserts that the claim is substantively deficient and that Plaintiffs once again fail to state a plausible claim for aiding and abetting conversion.

Plaintiffs' opposition to T-Mobile's motion to dismiss relies primarily on T-Mobile's imputed knowledge of its employee's conversion. Plaintiffs argue that T-Mobile had knowledge of the underlying conversion because employee Hansen had an actual agency relationship with T-Mobile and/or acted within the scope of his

employment by signing the lease thereby rendering T-Mobile vicariously liable. [D.E. 86 ¶¶ 35-39].

### A. *Elements of Aiding and Abetting Conversion*

To properly state a claim for aiding and abetting conversion, Plaintiffs must allege "(1) an underlying [conversion] on the part of the primary wrongdoer; (2) knowledge of the underlying [conversion] by the alleged aider and abettor; and (3) the rendering of substantial assistance in committing the [conversion] by the alleged aider and abettor." *Taubenfeld v. Lasko*, 324 So. 3d 529, 544 (Fla. 4th DCA 2021) (quoting *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012)). The parties dispute whether the second and first elements have been sufficiently pleaded.

Turning first to the knowledge element, with an aiding and abetting claim "Florida law requires that a defendant have actual 'knowledge of the underlying [wrongdoings],' not merely that certain 'red flags' indicate a defendant 'should have known' of the [wrongdoings]." *Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1343 (S.D. Fla. 2018) (quoting *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 950 (11th Cir. 2014)). While circumstantial evidence can establish actual knowledge, the circumstantial evidence must demonstrate that T-Mobile actually knew of the underlying conversion. *See Feng v. Walsh*, No. 19-24138-CIV, 2020 WL 5822420, at *7 (S.D. Fla. Sept. 14, 2020), *report and recommendation adopted,* No. 1:19-CV-24138, 2020 WL 5819615 (S.D. Fla. Sept. 30, 2020).

Plaintiffs' allegations do not support a strong inference of actual knowledge. Plaintiffs do not demonstrate much besides the bare conclusion that "T-Mobile had

actual knowledge." [D.E. 86 ¶ 34]. Upon careful review of the complaint it lacks sufficient allegations that plausibly allege facts that would allow a finder of fact to find actual knowledge on T-Mobile's end. Plaintiffs conclusorily allege, with no supporting facts, that T-Mobile had "actual knowledge" that "the Carpoffs misappropriated and converted funds belonging to the Funds." *Id.*

Plaintiffs seemingly acknowledge this problem as the response to the motion does not dwell on the actual knowledge theory. Instead, Plaintiffs focus on the alternative theory that the knowledge element is satisfied based on Hansen's knowledge and actions that can be legally imputed to T-Mobile. We will address that argument in greater detail.

### B. *Whether Hansen's Knowledge Can Be Imputed to T-Mobile*

Given the inability to plead direct actual knowledge by T-Mobile, Plaintiffs allege that T-Mobile had knowledge of the conversion scheme through Hansen, whose knowledge may be legally imputed to T-Mobile. [*Id.* ¶ 40]. In this manner Plaintiffs attempt to equate Hansen—a former T-Mobile employee—with T-Mobile itself. Plaintiffs first argue that because Hansen had an actual agency relationship with T-Mobile and signed the Lease within the scope of his employment, the knowledge element is satisfied by imputation. Second, Plaintiffs also contend that the knowledge element can be established simply because Hansen's knowledge was garnered within the scope of his employment and this renders T-Mobile vicariously liable under Florida law.

### 1.      *Principal-Agent Relationship*

To plead an actual agency relationship, a plaintiff must allege "(1) acknowledgment by the principal that the agent will act for him; (2) the agent's acceptance of the undertaking; and (3) control by the principal over the actions of the agent." *Ilgen v. Henderson Properties, Inc.*, 683 So. 2d 513, 515 (Fla. 2d DCA 1996) (citing *Goldschmidt v. Holdman*, 571 So. 2d 422, 424 n.5 (Fla. 1990)). The SAC sufficiently alleges a principal-agent relationship between T-Mobile and Hansen. The complaint plausibly established: (1) that T-Mobile "acknowledged" that Hansen would act on its behalf, and (2) that Hansen "accepted" the undertaking. [D.E. ¶38 ("T- Mobile acknowledged that Hansen would act for it, by giving him the title Field Operations Manager and assigning him to work with DC Solar concerning the procurement and installation of MSGs by DC Solar, the design of such installations, and whether such MSGs would be needed…Hansen accepted the undertaking by actively engaging in such work with DC Solar on behalf of T- Mobile.")]. Most importantly, Plaintiffs specifically asserted how "T-Mobile exercised control over Hansen, including supervising his work and the ability to change his responsibilities or even terminate him." *Id.* Taken as true, these allegations satisfy the elements of actual agency liability. *See Ilgen*, 683 So. 2d at 515 (discussing the elements necessary to establish apparent or actual agency).

At this stage, reasonable inferences must be drawn in Plaintiffs' favor. *See Borg-Warner Leasing, a Div. of Borg-Warner Acceptance Corp. v. Doyle Elec. Co.*, 733 F.2d 833, 836 (11th Cir. 1984) (reversing summary judgment because "the question

whether Myers was Borg-Warner's agent for purposes of the guaranty raises a genuine issue of material fact not amenable to summary judgment."). When resolution relies on the inferences from the facts asserted, the issue of agency is reserved for the trier of fact. *See Amerven, Inc. v. Abbadie*, 238 So. 2d 321, 322 (Fla. 3d DCA 1970) (reversing motion to dismiss and stating that "unless the evidence is susceptible to but one interpretation, the question of whether an agency relationship exists is for the jury to determine.")

Defendants argue, however, that the complaint fails to show that Hansen had authority to sign the Lease, which precludes imputing liability based on actual agency. [D.E. 89]. They reference this Court's previous determination that conclusory allegations were insufficient to establish actual authority, and how "[t]he SAC fares no better." *Id.*  In fairness, though, the Court's earlier conclusions were focused on fraud claims and relied on allegations contradicted by other sources incorporated into the pleading, such as the plea agreement.  We must now evaluate the SAC on its own merits and consider whether the Plaintiffs have successfully addressed the deficiencies as to this non-fraud claim. *See Fritz v. Standard Life Ins. Co.*, 676 F.2d 1356, 1358 (11th Cir.1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint."). Defendants also fail to acknowledge how the District Judge's Order makes it clear that the parts of the R&R that hinged on the plea agreement were not adopted. [D.E. 84] ("[T]he Court does not adopt those portions of the Report which rely on the substance of the Plea Agreement to determine whether the CAC states a claim.").  That, turns out, makes a difference

when we analyze this SAC strictly based on its allegations measured against Rule 8's requirements.

In sum, the agency liability theory is adequately pleaded in this SAC and plausibly supports a basis to impute knowledge to T-Mobile.

### 2. *Vicarious Liability*

Under an aiding and abetting conversion claim, knowledge can also be imputed to an employer through principles of respondeat superior. Where an employee commits an intentional wrong and not a mere act of negligence, however, a heightened standard of proof must be met to attach liability under respondeat superior. *See Perez v. Zazo*, 498 So. 2d 463, 465 (Fla. 3d DCA 1986) (holding that respondeat superior applies "only when that conduct in some way furthers the interests of the master or is at least motivated by a purpose to serve those interests, rather than the employee's own."). Plaintiffs argue Hansen's knowledge and conduct should be imputed to T-Mobile because Plaintiffs have pleaded that T-Mobile benefitted from the scheme at issue. *See Seidman & Seidman v. Gee*, 625 So. 2d 1, 3 (Fla. 3d DCA. 1992) (officer's misconduct imputed to the company where officer knew about the ongoing fraud, an intentional tort, and the corporation benefitted from the fraudulent conduct); *Beck v. Deloitte & Touche*, 144 F.3d 732, 736 (11th Cir. 1998) ("Under Florida law, the knowledge of a corporate officer whose fraud or misbehavior brings short-term gain to the corporation ... is imputed to the corporation, even if the officer's misbehavior ultimately causes a corporation's insolvency."). T-Mobile can thus potentially be liable for an intentional tort committed by Hansen, so long as his

conduct was within the scope of his employment. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) ("An employer may be liable for both negligent and intentional torts committed by an employee within the scope of his or her employment… While early decisions absolved employers of liability for the intentional torts of their employees, the law now imposes liability where the employee's purpose, however misguided, is wholly or in part to further the master's business.") (internal quotations and citations omitted); *Perez,* 498 So. 2d at 465 (holding that landlord was not liable for manager's intentional tort because purpose of action was not to serve landlord's interests).

The question here is whether, under this legal standard and in view of the facts available to Plaintiffs at the time of pleading, the SAC adequately alleges that Hansen was acting within the scope of his T-Mobile employment and T-Mobile benefitted in some manner.

    a. *Plaintiffs plead that Hansen's actions were within the scope of his employment with T-Mobile*

Focusing only on the four concerns of the SAC, we find that it has now sufficiently alleged a basis to assert vicarious liability on T-Mobile's part such that Hansen's knowledge can be imputed to T-Mobile. The Eleventh Circuit's decision in *United Techs. Corp. v. Mazer* is instructive on how these concepts operate in practice, where the court applied the doctrine of respondeat superior in the context of a motion to dismiss of a conversion claim. 556 F.3d 1260, 1271-73 (11th Cir. 2009). Under Florida law, the court held that plaintiff adequately alleged that the company's president was acting within the scope of his employment when he engaged in

conversion of blueprints relating to an aircraft engine manufactured by the plaintiff. *See id.* at 1267. The president had already pled guilty in Florida state court related to these actions and the company argued that if the employee had committed a crime, he could not have also engaged in criminal activity as an agent of the company. *See id.* at 1269. Nonetheless, in rejecting the guilty conviction—personal interest relationship, the "court found impossible [plaintiff's] allegation that Mazer committed his wrongful acts both personally and in his capacity as president of West–Hem." *Id.* Moreover, the court held that if such aviation blueprints could reasonably fall within the company's "stock in trade," and if part of the employee's duties were to buy and sell the goods in which the company operated, "then the employer could reasonably be answerable for its employee's illegal or tortious conduct in carrying out those tasks." *Id.* at 1273. The court reversed the trial court's dismissal order because the complaint's allegations were sufficient to state a claim for several reasons. *See id.* at 1274. The court held that the intricacies of the scope of employment authority and operations were within the knowledge of the defendants, which made it difficult for plaintiff to plead with greater specificity. *See id.*

In this case, as in *United*, the SAC is alleging that the tortfeasor's actions could have fallen within the scope of employment. [D.E ¶ 39] ("Hansen had approval authority over DC Solar proposals, which included procurement of MSGs."). Plaintiffs have arguably pleaded facts that, when read together, could lead one to infer that Hansen's conduct could reasonably have been the kind of task for which he was employed, and that Hansen could reasonably have been acting to serve and

benefit T-Mobile's business. The factual allegations also plausibly demonstrate how Hansen's actions furthered T-Mobile's interests. [D.E. 86 ¶ 39] ("Hansen also executed the 2015 lease within the scope of his employment because he was DC Solar's T-Mobile contact and worked with DC Solar to provide solar power to T-Mobile's cell phone towers."). Although there is a strong argument that Hansen acted for personal reasons entirely detached from his responsibilities, it is plausible to attribute the lease as a means of furthering T-Mobile's interests from Hansen's perspective.[3] The SAC alleges specifically that "Hansen believed that long-term solar energy was the correct path for T-Mobile and that DC Solar would turn into a legitimate business beneficial to T-Mobile…Hansen and Carpoff intended to provide benefits to T-Mobile to keep them as a customer until DC Solar could strengthen its business and convince T-Mobile to enter into legitimate contracts beneficial to both T-Mobile and DC Solar." [D.E 86 ¶ 36].

Accordingly, T-Mobile could theoretically be vicariously liable given its imputed knowledge of the conversion as the SAC alleges that Hansen furthered the interests of T-Mobile or was at least motivated by a purpose to serve those interests. And cognizant of *United's* analysis, we also find that we should not unduly fault Plaintiffs for their difficulty pleading with greater accuracy at this stage where the

---

[3] "Hansen believed that long-term solar energy was the correct path for T-Mobile and that DC Solar would turn into a legitimate business beneficial to T-Mobile…Hansen and Carpoff intended to provide benefits to T-Mobile to keep them as a customer until DC Solar could strengthen its business and convince T-Mobile to enter into legitimate contracts beneficial to both T-Mobile and DC Solar." (D.E 86 ¶ 36.)

details of Hansen's employment and relationship with other T-Mobile officers are within the knowledge of defendants. *See United Techs. Corp*, 556 F.3d at 1274. The allegations regarding Hansen's actions "within the scope of his employment" [D.E. 86 ¶ 38] generate an inference sufficient for notice pleading and sufficient to withstand a Rule 12(b)(6) motion. Correspondingly, Hansen's responsibilities as "Field Operations Manager" working with DC Solar [D.E. 86 ¶ 38], can create an inference that the lease fell within the company's "stock in trade." *Id.* at 1273. Under these circumstances, an employer can be held vicariously liable for intentional torts committed by one of its employees, if the employee acted within the real or apparent scope of the business. *See, e.g.*, *Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1556–57 (S.D. Fla. 1996) (declining motion to dismiss where receptionist alleged that another employee was acting within the scope of employment when he engaged in offensive activities and sexually harassed the plaintiff).

In response, T-Mobile argues that knowledge of an agent is not imputed where the agent, even if acting within the scope of his authority, "has a motive or interest in concealing the facts from his principal," and that such motive is present "when the agent is engaged in committing an independent fraudulent act on his own account." [D.E. 89 (quoting *Lambert v. Heaton*, 134 So. 2d 536, 538-39 (Fla. 1st DCA 1961)]. That makes sense; yet Defendants forget that such motivations and intent are not alleged in the SAC. Instead, as we found in our earlier Report and Recommendation, we gleaned such facts from the plea agreement that cannot be relied upon for purpose of this motion to dismiss. *See In re Takata Airbag Products Liability Litigation*, 396

F. Supp. 3d 1101, 1129 (S.D. Fla. 2019) (declining to judicially notice the truth of a plea agreement's contents "because indisputability is a prerequisite to judicially noticing facts under Rule 201(b)" (citations omitted). To accept Defendant's arguments grounded on the plea agreement would bypass the safeguards involved with the standard practice of proving facts by competent evidence in district court. *See id.* The SAC by itself is not clear that Hansen was acting in his own self-interest. Hansen could hypothetically commit wrongful acts both personally and in his capacity as a T-Mobile employee. *See United Techs. Corp*, 556 F.3d at 1269; *see also Columbia by The Sea, Inc. v. Petty*, 157 So.2d 190, 192 (Fla. 2d DCA 1963) (holding that jury could conclude that restaurant employee acted within scope of employment when he battered customer with an ashtray in an attempt to get a thirty-five-cent upcharge for salad dressing).

In sum, the first element required for imputed knowledge based on vicarious liability has been plausibly alleged in the SAC.

### b. *Plaintiffs plead that Hansen's actions were not entirely adverse to T-Mobile*

Plaintiffs may impute Hansen's knowledge to T-Mobile through respondeat superior only insofar as his actions are not entirely adverse to T-Mobile. *See Beck*, 144 F.3d at 736. The SAC alleges a plethora of supposed T-Mobile's benefits from Hansen's activities. [D.E. 86 ¶ 37 ("immediate access to MSGs," "reduced rates," and "discounted costs.")]. Specifically, "[b]y signing the 2015 lease, Hansen and Carpoff intended to provide benefits to T-Mobile to keep them as a customer until DC Solar could strengthen its business and convince T-Mobile to enter into legitimate contracts

beneficial to both T-Mobile and DC Solar. Mr. Hansen signed the T-Mobile Lease in material part because he believed these benefits and DC Solar's continued existence was a benefit to T-Mobile." (D.E 86 ¶ 36). In this way, the SAC alleges that the Hansen's actions did intend to benefit T-Mobile. *See Beck*, 144 F.3d at 736 (explaining how entire adversity does not exist if the employee's actions intend to benefit the corporation). And because it plausibly alleges Hansen's intention to benefit T-Mobile, imputation of Hansen's knowledge to T-Mobile can be legally founded if we assume these allegations are true. *See id.*

The motion argues that entire adversity requires allegations that the agent's actions were neither "intended to benefit the corporation nor actually cause short- or long-term benefit to the corporation." *Id.* at 736. In other words, "imputation is permitted when an agent's actions were designed to turn the corporation into an engine of theft against outsiders, as opposed to when an agent took actions that diminished the assets of the corporation itself." *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1096 (11th Cir. 2017) (internal quotations omitted).

Yet, under the adverse interest doctrine, construing the allegations in Plaintiffs' favor, T-Mobile may still have benefitted in some way, at least sufficiently enough for pleading purposes. *See Brandt v. Lazard Freres & Co.*, LLC, 96-2653-CIV-DAVIS, 1997 WL 469325, at *4 (S.D. Fla. Aug. 1, 1997) (explaining the proper inquiry is not whether the employees' actions were ultimately beneficial to the company, but whether the corporation benefitted in any way). The SAC should not be dismissed because the four corners of the complaint show that Plaintiffs can conceivably prove

the set of facts that would entitle them to relief at a later stage of litigation. *See Jackam v. Hospital Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986) (explaining that, in evaluating a Rule 12(b)(6) motion, the issue is not whether the plaintiff may eventually prevail, but whether the allegations are enough to allow discovery in an attempt to substantiate the allegations); *see also Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("The pleadings must show, in short, that the Plaintiffs have no claim before the 12(b)(6) motion may be granted.").

In that light, a reasonable factfinder could conclude that Hansen's actions garnered benefits to T-Mobile and served to extend a relationship favorable to the company. That is enough because courts have recognized that the adverse interest exception is narrow and only applies when an agent entirely disregards or abandons the principal's interests. *See, e.g.*, *Design Pallets, Inc. v. Gray Robinson*, P.A., No. 2013-CA-006004-O, 2016 WL 3128471, at *2 (Fla. Cir. Ct. Apr. 13, 2016). Consequently, Hansen's knowledge and acts can be imputed to T-Mobile, for now. *See Chang*, 845 F.3d at 1095 (acknowledging how knowledge an employee acquired within the scope of authority generally may be imputed to employer).

Defendant insists that dismissal is appropriate, notwithstanding the alleged benefits, based on this Court's previous finding that "any benefit the company gained from DC Solar's services would have been derived from the already existing 2012 vendor agreement." [D.E. 89]. But T-Mobile's premise – that the vendor agreement

has been incorporated into the SAC – is unpersuasive. [4] The incorporation by reference doctrine does not lead to a definitive conclusion that the vendor agreement should be considered as part of the pleadings. *See Horsley v. Feldt*, 304 F.3d 1125, 1133-35 (11th Cir. 2002) (concluding that an article attached to the amended answer should be considered because complaint quoted alleged statements from the article).

This is especially the case at this stage where the Court must draw all reasonable inferences in Plaintiffs' favor. *See Ocean Commnc's*, 2020 WL 2042393, at *1. T- Mobile relies on language that Hansen worked with T-Mobile as their contact to keep them as a customer, which is not a plain reference to the 2012 vendor agreement. [D.E. 93].

In support of its incorporation argument, T-Mobile cites *Veal v. Voyager Prop. & Cas. Ins. Co.*, 51 So. 3d 1246, 1249 (Fla. 2d DCA 2011). There, the complaint alleged that a party "was required to pay to Veal and class members in the class action case their damages and costs." *Id.* at 1248. The court concluded that "the complaint refers to the settlement agreement, and in fact, Veal's standing to bring suit is premised on the terms of that agreement. Consequently, since the complaint impliedly incorporated the terms of a settlement agreement by reference, the trial court was

---

[4]     The previous amended complaint, Plaintiffs alleged that "T-Mobile's relationship with Jeff and Paulette Carpoff began in May 2012 when T-Mobile was looking to save money with respect to backup generators during power outages." This allegation was sufficient for the Court to rely on the 2012 vendor agreement. Now, Plaintiffs have omitted from the SAC any reference to the start of contractual relations with the Carpoffs in 2012.

entitled to review the terms of that agreement to determine the nature of the claim being alleged." *Id.* at 1249-50.

By contrast, to "keep" T-Mobile as a customer [D.E. 86 ¶ 36], is not the same as a clear reference to the existence of a settlement agreement. *See id.* Drawing reasonable inferences in the Plaintiffs' favor, the SAC does not refer to the Vendor Agreement nor does it incorporate it, explicitly or implicitly, as was the case in *Veal.* *See Enlow v. E.C. Scott Wright, P.A.*, 274 So. 3d 1192, 1194 (Fla. 5th DCA 2019) ("Because nothing within the four corners of the complaint conclusively showed that the statute of limitations had run on the Enlows' malpractice claim, it was error to grant the motion to dismiss on those grounds."). Plaintiffs have alleged added benefits from The Lease, and that is enough for purposes of overcoming Defendant's motion. *See also Speaker v. U.S. Dep't of Health & Hum. Servs. Centers for Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010) ("[Plaintiff] need not prove his case on the pleadings—his Amended Complaint must merely provide enough factual material to raise a reasonable inference, and thus a plausible claim."); *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295–96 (11th Cir. 2007) (explaining how the pleading standard "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (quoting *Twombly,* 550 U.S. at 556).

Accepting the allegations as true, we cannot say Hansen's interests were *entirely* adverse to T-Mobile's interests because of the alleged benefits. [D.E. 86 ¶ 35]. At least at the motion to dismiss stage, for this one claim, a factfinder could impute

Hansen's knowledge to T-Mobile. *See Chang,* 845 F.3d at 1096 ("These allegations support the inference that Gordon used the Bank as an engine for his theft by using the escrow account to collect funds that he then misappropriated.").

Discovery may very well reveal dispositive evidence to the contrary. *See United Techs. Corp.,* 556 F. 3d at 1274 (noting that it may be the case that employee was acting outside the scope of his employment as future evidence can reveal how the tortious action was expressly prohibited by the job description or board resolution). For instance, at summary judgment the plea agreement and its implications will undoubtedly be placed at center stage.  Thus Plaintiffs may ultimately be incapable of establishing vicarious liability; but, at the pleading stage, we only consider whether the allegations are "enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Giving Plaintiffs some benefit of the doubt, the allegations that Hansen acted within his authority to benefit T-Mobile extend above the speculative level. *See Doe v. Wireless Vision S., LLC*, No. 16-14449-CIV, 2016 WL 10951317, at *3 (S.D. Fla. Dec. 23, 2016), *report and recommendation adopted,* No. 2:16-CV-14449, 2017 WL 7790128 (S.D. Fla. Jan. 11, 2017) (declining to find, in a 12(b)(6) motion, whether the employees were acting within the scope of their respective jobs where the issue was better left for further development, yet making clear that it is not to say plaintiff will prevail with respondeat superior theory); *see also United*, 556 F.3d at 1274 (acknowledging that discovery may reveal the employee was indisputably outside the scope of his employment or the only one benefiting from the actions, which means defendants may be entitled to summary judgment).

In sum, Plaintiffs have now amended their complaint to state a claim for relief that is plausible on its face. Now, the plaintiffs plead only one count of aiding and abetting conversion, under Rule 8(a), as opposed to Rule 9's requirement of greater particularity in all averments of fraud or mistake. *See Hendley v. Am. Nat'l Fire Ins. Co.*, 842 F.2d 267, 269 (11th Cir.1988) (concluding that Rule 9(b) was not satisfied when plaintiff "steadfastly refused to offer specifics" and "never earmarked any facts as demonstrative of fraud"). There is now a clear relation between the factual allegations asserted in the complaint and the resulting claim, from which a plausible claim can be found, which is all that is required under Rule 8(a).

### C. *Whether Complaint Alleged Facts Showing That T-Mobile Rendered Substantial Assistance to the Conversion Scheme*

Turning to the third element for an aiding and abetting conversion claim, Plaintiffs allege a series of actions taken by T-Mobile in support of DC Solar's efforts to convert funds for the Carpoffs. [D.E. 86 ¶ 40] (attributing to T-Mobile a list of actions, including "[f]raudulently signing the T-Mobile Lease"; "[a]greeing to allow the Fraudsters to use T-Mobile's name and reputation in promoting investment in DC Solar Solutions"; and "pretending that T-Mobile had leased more than $130 million of MSGs from DC Solar Distribution."). These allegations, on their face, may establish that T-Mobile supplied substantial assistance to further the conversion scheme, which would satisfy the third element of the claim.

This Court's previous report and recommendation relied on the plea agreement to find that those actions were unilaterally undertaken by Hansen and were not furthered in any way by T-Mobile. T-Mobile draws from the same well in this motion

and claims that the Complaint "admits those actions were undertaken by Hansen, not T-Mobile." [D.E. 89]. But this conclusion cannot be drawn at this stage given that the plea agreement cannot be considered to impeach the facts alleged in this SAC, for the reasons we have discussed above.

At this stage, the third element for an aiding and abetting claim has been satisfied. And for the reasons addressed above, Plaintiffs allege plausible facts from which to impute Hansen's actions and knowledge to T-Mobile. Accordingly, Defendant's motion to dismiss this count should be **DENIED.**

## IV. CONCLUSION

This Court accordingly **RECOMMENDS** that T-Mobile's motion to dismiss [D.E. 89] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have **fourteen (14) days** within which to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 27th day of

June, 2023.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge